IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA CLARK,

        PLAINTIFF.

CIVIL ACTION NO. _____

HON.

GENERAL ELECTRIC CORPORATION
and INSIGHT GLOBAL,

        DEFENDANTS.

_____/

CARLA D. AIKENS, P.C.
CARLA D. AIKENS (P69530)
ASHLEY J. BURRESS (P79614)
*Attorneys for* Plaintiff
615 Griswold Street, Suite 709
Detroit, Michigan 48226
carla@aikenslawfirm.com
ashley@aikenslawfirm.com
Phone: (844) 835-2993
Fax: (877) 454-1680

_____/

*There are no other prior or pending matters between these parties.*

## COMPLAINT

PLAINTIFF, ANGELA CLARK, by and through his attorneys, CARLA D. AIKENS, P.C., submits the following Complaint against DEFENDANTS GENERAL ELECTRIC CORPORATION and INSIGHT GLOBAL.

## JURISDICTION

1. At all relevant times, Plaintiff, Angela Clark, was a resident of the County of Oakland, State of Michigan.

1

2.   Defendant, General Electric Corporation, has a place of continuous and systematic place of business at 40 West E. Main Street, in Van Buren Township, State of Michigan.

3.   Defendant, Insight Global, has a place of continuous and systematic place of business at 400 Renaissance, in the city of Detroit, State of Michigan.

4.   This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.

5.   Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

6.   Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

7.   Plaintiff Angela Clark was hired by Defendant Insight Global (hereinafter "Defendant Insight") and was to work for Defendant General Electric Corporation (hereinafter "Defendant GE") as a Product Owner, on or around September 23, 2019.

8.   The assignment was a three month contract-to-hire, where Defendant GE was to hire Plaintiff for a full time position after the preliminary contract term.

9.   Plaintiff was assigned/contracted as a Product Owner with Defendant GE's IT department and was making $75.00 per hour.

10.  However, when Plaintiff began her assignment, she was forced to take on several additional roles, including Business Analyst, Product Manager, and Project Manager. She

was also required to support the Development Team, the System Analyst Team, and the Global team in the UK.

11. Plaintiff is an African American female and was, to her knowledge, the only African American in her department. Her department consisted of majority white/Caucasian males.

12. Plaintiff's assignments and/or project load were more strenuous than any of her white/Caucasian and male counterparts.

13. Plaintiff continued to manage the strenuous project load without incident.

14. In fact, Plaintiff would receive high accolades and praise from upper management and her supervisor, Doug Witter.

15. On October 31, 2019 Doug Witter approached Plaintiff and expressed that he had the intention to hire her for a full time position within the department. He assured Plaintiff that as long as she filled out the application, he would "have his connection in Human Resources take care of the rest."

16. Doug Witter emailed Plaintiff with a link to apply for an internal position.

17. On or about November 11, 2019, Plaintiff used the link provided by Doug Witter to apply for the position of Staff Cyber Security Researcher.

18. On November 15, 2019, Plaintiff worked from home, which she had done in the past without incident.

19. That same day, at approximately 5 p.m., Doug Witter emailed Plaintiff asking where she was and stated that people in the office were looking for her.

20. Plaintiff explained that she had been working from home because she had a strenuous workload that day and she wanted to complete her tasks.

21. Doug Witter replied, and claimed he was not in favor of people working from home.

22. This directly contradicted what he had expressed in a prior, one-on-one meeting with Plaintiff in which he stated that he was fine with staff working from home one or two days per week, which Plaintiff had done in the past.

23. The white/Caucasian males in her department were able to work from home without consequence.

24. On November 16, 2019, Doug Witter sent an email to Plaintiff and Defendant Insight abruptly canceling Plaintiff's contract/assignment with Defendant GE.

25. Defendant Insight informed Plaintiff that her contract/assignment with Defendant GE had been canceled because she worked from home without approval from her manager.

26. Doug Witter sent an email to Defendant Insight alleging that Plaintiff's contract was not canceled because she worked from home, but rather due to her alleged poor performance.

27. Doug Witter pointed to several business documents that Plaintiff had allegedly failed to complete.

28. Doug Witter's statements are false and were calculated to harm Plaintiff's standing within GE, the IT community, and her future employment prospects.

29. Plaintiff has become aware of Defendant GE abruptly ending several other assignments for African American contractors through Defendant Insight right before the three month contract-to-hire term was complete, and/or not hiring African Americans at all in the department.

30. Defendant Insight failed to take any steps to investigate or remedy the situation with Plaintiff's employment.

31. Instead, Cassie Nedeljko and Orion Page (both white/Caucasian) employees of Defendant Insight, started to verbally threaten Plaintiff through text messages.

32. On Saturday, November 17, 2019, Nedeljko and Page started texting Plaintiff stating that she needed to return her GE assigned laptop immediately.

33. Plaintiff explained that she was not feeling well, so she would return the laptop first thing Monday morning.

34. Nedeljko and Page stated that returning the laptop on Monday was not an option and that they would instead come to Plaintiff's home to retrieve the equipment.

35. Nedeljko and/or Page threatened Plaintiff, stating that if she refused them entry into her home, they would contact the Police and GE and report the laptop as stolen.

36. Plaintiff became fearful of Nedeljko and Page's verbally aggressive behavior and constant threats. She was fearful they would just show up at her home.

37. This was not the first incident Plaintiff had experienced with Cassie Nedeljko. In their initial encounter, Nedeljko made a number of off-color remarks toward Plaintiff and attempted to block Plaintiff from the subject GE position.

38. The following Monday, Plaintiff returned the laptop to Defendant GE's Van Buren location. Defendant Insight was informed of the return.

39. Nedeljko started aggressively texting Plaintiff again, falsely accusing Plaintiff of stealing documents from Defendant GE.

40. Based on the false statements from both Defendant GE and Defendant Insight Global, Plaintiff has not been assigned any new contract positions.

41. Plaintiff filed a charge of discrimination with the Detroit office of the Equal Employment Opportunity Commission ("EEOC") against Defendants GE and Defendant Insight on the basis of her race.

42. In a letter dated February 25, 2020, the EEOC issued Plaintiff a Notice of her Right to Sue.

43. Plaintiff requests relief as described in the Prayer of Relief below.

## COUNT I
### HARASSMENT & DISCRIMINATION ON THE BASIS OF PLAINTIFF'S RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000E *ET SEQ.* ("TITLE VII")
#### (As to Defendant General Electric Corporation)

44. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

45. At all material times, Defendant GE was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

46. Defendant GE's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race.

47. A respondeat superior relationship existed because Plaintiff's manager Doug Witter had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

48. Plaintiff is African American, and, as a result, she is a member of a protected class pursuant to Title VII.

49. Plaintiff was subjected to offensive communication and conduct on the basis of membership in this protected class.

6

50. Specifically, upon information and belief, employees of other races have never been terminated for working from home.

51. Moreover, white/Caucasian employees were routinely given lesser workloads and hired-in more frequently as full time employees.

52. Defendant GE and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

53. Plaintiff notified Defendant GE, through its agents, of the unwelcomed conduct and communication and Defendant GE failed to remedy the unwelcomed conduct or communication.

54. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff employment and created an intimidating, hostile, and/or offensive work environment, as alleged in the statement of facts.

55. As a proximate result of Defendant GE's discriminatory actions, Plaintiff have suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

56. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

57. Plaintiff requests the relief as described in the Prayer for Relief below.

**COUNT II**
**HARASSMENT & DISCRIMINATION ON THE BASIS OF PLAINTIFF'S RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000E *ET SEQ*. ("TITLE VII")**
**(As to Defendant Insight Global)**

58. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

59. At all material times, Defendant Insight was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

60. Defendant Insight's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race.

61. A respondeat superior relationship existed because Cassie Nedeljiko and Orion Page had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

62. Plaintiff is African American, and, as a result, she is a member of a protected class pursuant to Title VII.

63. Plaintiff was subjected to offensive communication and conduct on the basis of membership in this protected class.

64. Specifically, upon information and belief, employees of other races were routinely assisted in receiving positions as full time employees within the host employer.

65. Defendant Insight and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

66. Plaintiff notified Defendant Insight, through its agents, of the unwelcomed conduct and communication and Defendant Insight failed to remedy the unwelcomed conduct or communication.

67. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff employment and created an intimidating, hostile, and/or offensive work environment, as alleged in the statement of facts.

68. As a proximate result of the Defendant Insight's discriminatory actions, Plaintiff have suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

69. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

70. Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT III
### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT MCL 37.2101 et seq. ("ELCRA")
**(As to Defendant General Electric Corporation)**

71. Plaintiff incorporates by reference all allegation in the preceding paragraphs as if there were alleged herein.

72. At all material times, Plaintiff was an employee and Defendant was her employer covered by, and within the meaning of ELCRA.

73. Defendant GE further, is a covered "employer" within the meaning of Elliot Larsen Civil Rights Act (ELCRA).

74. A respondeat superior relationship existed between Plaintiff and Defendant GE, through its management, which had the ability to make decisions impacting Plaintiff's work activity.

75. Defendant GE's conduct, as alleged herein, violated the Michigan Elliot-Larsen Civil Rights Act, MCL 37,2101 et seq., which makes it unlawful to harass or discriminate against an employee on the basis of their race.

76. Plaintiff is a member of a protected class being of African American descent.

77. Plaintiff was subjected to offensive communication or conduct on the basis of her membership in this protected class.

78. The communication and conduct was unwelcomed.

79. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged throughout this complaint.

80. As a direct and proximate result of Defendant GE's wrongful acts and omission, Plaintiff has sustained loss of earning, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation and embarrassment.

81. Plaintiff requests the relief as described in the Prayer for Relief below.

**COUNT IV**
**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT MCL 37.2101 et seq. ("ELCRA")**
**(As to Defendant Insight Global)**

82. Plaintiff incorporates by reference all allegation in the preceding paragraphs as if there were alleged herein.

83. At all material times, Plaintiff was an employee and Defendant Insight was her employer covered by, and within the meaning of ELCRA.

84. Defendant Insight further, is a covered "employer" within the meaning of Elliot Larsen Civil Rights Act (ELCRA).

85. A respondeat superior relationship existed between Plaintiff and Defendant Insight, through its management, which had the ability to make decisions impacting Plaintiff's work activity.

86. Defendant Insight's conduct, as alleged herein, violated the Michigan Elliot-Larsen Civil Rights Act, MCL 37,2101 et seq., which makes it unlawful to harass or discriminate against an employee on the basis of their race.

87. Plaintiff is a member of a protected class being of African American descent.

88. Plaintiff was subjected to offensive communication or conduct on the basis of her membership in this protected class.

89. The communication and conduct was unwelcomed.

90. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged throughout this complaint.

91. As a direct and proximate result of Defendant Insight's wrongful acts and omission, Plaintiff has sustained loss of earning, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation and embarrassment.

92. Plaintiff requests the relief as described in the Prayer for Relief below.

### COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to both Defendants General Electric Corporation and Insight Global)

93. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

94. Defendants' conduct as outlined above was intentional.

95. Defendants' conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

96. Defendants' conduct as outlined above was of that that no reasonable person would be expected to reasonably endure.

97. Defendants' conduct as outlined above was for an ulterior motive or purpose.

98. Defendants' conduct resulted in severe and serious emotional distress.

99. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in the manner outlined above.

100. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY
### (As to both Defendants General Electric Corporation and Insight Global)

101. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

102. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employee can be found to be liable for wrongful discharge, they are:

> (1) explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;
> (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and
> (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

103. Plaintiff's discharge came as the result of false and unsupported allegations of poor work performance.

104. Moreover, ELCRA has explicit language that prohibits the discharge, discipline, or other adverse treatment of Plaintiff, however, Defendants retaliated against Plaintiff for attempting to protect her rights laid out in the statute.

105. As a result of Defendants' actions, and consequent harm, Plaintiff has suffered such damages in an amount to be proven at trial.

106. Plaintiff requests relief as described in the Prayer for Relief below.

## PRAYER FOR RELIEF

PLAINTIFF, Angela Clark, respectfully requests that this Court enter judgment against Defendant as follows:

1. Compensatory damages;

2. Exemplary damages;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees, and equitable relief; and

5. Any other relief permitted as set forth in the Acts hereunder.

## JURY DEMAND

COMES NOW Plaintiff and hereby makes her demand for trial by jury.

Respectfully Submitted by:

CARLA D. AIKENS, P.C.

*/s/ Carla D. Aikens*
Carla D. Aikens (P69530)
Ashley J. Burress (P79614)
Attorneys for Plaintiff
615 Griswold Street, Suite 709
Detroit, MI 48226
(844) 835-2993

Dated: May 25, 2020